<u>**EXHIBIT A**</u>

State of Illinois )
                               ) ss
County of St. Clair )

<u>**UNSWORN DECLARATION UNDER PENALTY OF PERJURY**</u>
<u>**IN SUPPORT OF COMPLAINT FOR FORFEITURE**</u>

I, Kevin Thebeau, do hereby depose and declare under penalty of perjury the following:

At all times relevant herein, I have been a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

1. On January 11, 2016, officers conducted a traffic stop on a silver Volkswagen Passat station wagon bearing a Texas temporary registration for improper lane usage on Interstate 70 Westbound at the 26 mile marker in Madison County, Illinois. The vehicle returned to Jesus Ruben Davilla out of San Antonio, Texas. TFO Matt Plassman made initial contact with the driver of the vehicle and identified him as Jose Luis MAGALLON. TFO Plassman identified himself and advised MAGALLON of the reason for the stop.

2. TFO Plassman requested and received a driver's license from MAGALLON and told MAGALLON that he would be issuing a written warning for the traffic violation. TFO Plassman handed MAGALLON's driver's license to TFO Thebeau, who queried MAGALLON through law enforcement databases. TFO Plassman asked MAGALLON the reason for his trip and MAGALLON told TFO Plassman that he flew into Indianapolis, Indiana to purchase the Volkswagen Passat station wagon he was driving. MAGALLON told TFO Plassman that he found

1

the vehicle on Craigslist, but did not specify how much the vehicle cost. MAGALLON told TFO Plassman that he only stayed in Indianapolis for one night and was now driving to St. Louis to see the Arch. MAGALLON told TFO Plassman that he was planning on staying in St. Louis for one night, and then would continue driving to San Antonio, Texas. MAGALLON told TFO Plassman that he and his father owned a business where they purchased different items, such as high end cars, boats, RVs, that they would then re-sell. TFO Plassman asked MAGALLON if he had any paperwork detailing his purchase of the Volkswagen Passat station wagon. MAGALLON told TFO TFO Plassman that he only had the title, and opened a backpack on the passenger front seat to retrieve it. While looking for the title, MAGALLON partially pulled a bank bag out of the backpack. MAGALLON unzipped the bank bag approximately one inch and pulled the title out of the bank bag. The entire time that MAGALLON was retrieving the title it appeared to TFO Plassman that MAGALLON was attempting to conceal the contents of the bank bag and the backpack. After obtaining the vehicle title, TFO Plassman observed the last date of sale on the title to be May 15, 2015 with no Purchaser signature. TFO Plassman also observed numerous indicators of nervous behavior from MAGALLON to include heavy breathing and shaking of MAGALLON's hands. TFO Plassman continued to observe this nervous behavior after he had told MAGALLON he would be issuing the written warning for the traffic violation. TFO Plassman told MAGALLON to remain in his vehicle while TFO Plassman returned to the patrol vehicle.

3. TFO Thebeau told TFO Plassman that he had queried MAGALLON's driver's license and warrant status on his mobile data terminal and found MAGALLON to be clear of any warrants and to have a valid Texas driver's license. TFO Thebeau also completed a criminal history history check on MAGALLON and found MAGALLON had an FBI Number indicating that

MAGALLON had been arrested before. TFO Thebeau informed TFO Plassman that his mobile data data terminal had not returned with the details on MAGALLON's criminal history. TFO Thebeau then contacted Chief Christopher Singleton of the Marine, Illinois Police Department and requested that Chief Singleton and his K9 Paco respond to the location of the traffic stop. TFO Thebeau also completed a written warning for MAGALLON for Improper Lane Usage. TFO Jesse Fulkerson and and TFO Larry Brantley arrived on scene to assist.

4.  TFO Plassman returned to MAGALLON's vehicle and issued him his written warning. TFO Plassman asked MAGALLON if there were any illegal narcotics or large sums of money in the vehicle. MAGALLON stated there was not. MAGALLON told TFO Plassman that he was more than welcome to search the vehicle. TFO Plassman presented MAGALLON with a Consent to Search form and requested MAGALLON read and sign the form to verify his consent for the search of his vehicle. MAGALLON told TFO Plassman he wanted to call his attorney before he signed any documents. TFO Plassman told MAGALLON he was free to make any phone calls, and advised MAGALLON there was a narcotics K9 in route to their location to conduct an open air sniff of the vehicle. Approximately one minute later Chief Singleton and his K9 partner Paco arrived on scene.

5.  TFO Plassman requested that MAGALLON exit the vehicle so that Chief Singleton and K9 Paco could safely perform the open air sniff. After MAGALLON exited the vehicle, TFO Thebeau, TFO Fulkerson and TFO Pirtle observed MAGALLON to be sweating profusely around his armpits. This appeared as another sign of nervous behavior from MAGALLON due to the fact that it was approximately 28 degrees outside.

6.  Chief Singleton retrieved K9 Paco from his patrol vehicle and walked K9 Paco to the

vehicle. Chief Singleton started the sniff at the rear passenger side of the vehicle and began following K9 Paco as he worked in a counter clockwise direction around the vehicle. When K9 Paco arrived at the passenger side rear door of the vehicle, Chief Singleton observed K9 Paco's head turn and his nose go up in the air. K9 Paco then began breathing emphatically. This is a behavior of of K9 Paco's that Chief Singleton recognizes when K9 Paco is attempting to locate the source of the odor. Chief Singleton continued following K9 Paco as he continued to work in a counterclockwise direction around the vehicle. K9 Paco began sniffing emphatically once again and pulled Chief Singleton back towards the area between the passenger side rear and front door of the vehicle. K9 Paco put both of his paws on the side of the vehicle and again began sniffing emphatically. Chief Singleton further observed K9 Paco as he began jumping up on the side of the vehicle and nose poking the rear door seam and scratching on the area between the passenger side front and rear doors. This is a positive alert to the presence of drug odor by K9 Paco. Chief Singleton then returned K9 Paco to his patrol vehicle and informed TFO Thebeau of the positive alert by K9 Paco.

7. TFO Plassman informed MAGALLON that the positive K9 alert gave officers probable cause to search the vehicle and its contents for contraband. TFO Plassman, TFO Thebeau, and TFO Brantley began a search of the Volkswagen. During the search TFO Plassman located seven rubber banded bundles of United States currency wrapped in plastic wrap under some clothes in the backpack on the front passenger seat. Both MAGALLON and the vehicle were transported to the Pontoon Beach Police Department for further investigation.

8. At the Pontoon Beach Police Department, the United States currency was placed into a new brown paper bag. The paper bag containing the United States currency was placed in the third position in a row of four paper bags (all new paper bags). TFO Thebeau then contacted Chief

Singleton and requested a K9 sniff on the United States currency. Upon Chief Singleton's arrival at at the Pontoon Beach Police Department, Chief Singleton was directed to an area where he observed four brown paper bags lined up in a row in the hallway of the Pontoon Beach Police Department. The brown paper bags were approximately 3 feet apart. Chief Singleton directed K9 Paco to check the first bag. K9 Paco began sniffing each bag and when K9 Paco arrived at the third bag he began nose poking and scratching the bag and jumping, placing both of his front paws on the bag. This is a positive alert to the presence of drug odor by K9 Paco. Chief Singleton then informed officers that that K9 Paco alerted to the third brown paper bag.

9. TFO Thebeau and TFO Plassman conducted a video interview of MAGALLON. TFO Thebeau read MAGALLON his Miranda Rights and presented MAGALLON with a Miranda Rights form. MAGALLON then re-read the Miranda Rights and initialed each one indicating he understood his rights. TFO Thebeau asked MAGALLON if he wished to waive his rights and talk to the officers about the currency located in his vehicle. MAGALLON said he did not want to waive his rights, and wished to speak to his attorney. MAGALLON also denied consent for officers to search his cell phones. At this time the interview was ended.

10. TFO Fulkerson and TFO Pirtle entered the interview room where they signed and sealed the evidence bag containing the seized currency in front of MAGALLON. MAGALLON said he would not sign the evidence bag until he was allowed to speak with his attorney. TFO Thebeau allowed MAGALLON to call his attorney; however MAGALLON was not able to make contact. After TFO Thebeau wrote "refused" on the Owner/Possessor line of the evidence bag, MAGALLON changed his mind and signed his name on the evidence bag.

11. During the search of the vehicle agents also noticed several store receipts, a

5

MoneyGram receipt and receipts for two rental vehicles all from the Detroit, Michigan area. Specifically, agents located Payless Car Rental receipts for two vehicles rented in Detroit, Michigan on January 6, 2016 at 9:25 p.m. both with a due back date of January 8, 2016. Agents also located a a customer invoice dated January 10, 2016 indicating that one of the vehicles rented from Payless Car Rental was returned on January 10, 2016

12. The Pontoon Beach Police Department seized the 2007 Volkswagen Passat that MAGALLON was driving at the time of the traffic stop. Officers noted that the odometer reading was over 175,000 miles and that due to the wear and tear on the vehicle, the vehicle had a low value. Detective Rich Carney of the Pontoon Beach Police Department examined the title seized with the vehicle and noted that the title listed Shelly L. Burrell as the owner of the vehicle. The title also listed a date of sale of "5/15/15" along with Ms. Burrell's signature in the "Seller" portion of the title. The "Buyer" portion of the title remained blank.

13. Detective Carney contacted Mrs. Burrell by telephone and she forwarded Detective Carney to her husband, Terry W. Burrell, Jr. Mr. Burrell informed Detective Carney that he sold the vehicle on May 15, 2015. At the time of the sale, Mr. Burnell thought the buyer (an unknown male) completed the bottom portion of the title. Mr. Burnell provided Detective Carney with the buyer's telephone number.

14. Detective Carney contacted the male who allegedly purchased the Passat from the Burrells via telephone. A male answered and identified himself as Ahmad Dahglas. Mr. Dahglas stated that after he purchased the vehicle in May of 2015 from Terry Burnell he transported it to a mechanic where the car remained for several months due to malfunctions within the engine. Mr. Dahglas listed the Passat for sale on Craigslist and a man who identified himself as "Lee" answered

the advertisement. Lee met Mr. Dahglas in Mr. Dahglas' hometown of Deerberg, Michigan, where Lee purchased the vehicle for $3,250.00 in cash on January 10, 2016. Lee told Mr. Dahglas that he owned a dealership and planned to drive the Passat to Texas. Lee then placed a Texas temporary registration on the Passat before driving away with the vehicle. Mr. Dahglas described Lee as pale skinned with blue eyes and stated that he spoke with a noticeable accent. These are all attributes which belong to Jose MAGALLON.

15. Agents also located business cards listing MAGALLON as the Chief Executive Officer and Founder of Magallon Enterprises LLC. The business cards also listed a website (www.magallonenterprises.com) for Magallon Enterprises LLC; however the website redirects the user to www.emobile.com. The emobile.com website is in Spanish and lists the corporate contact as Av. Heroico Colegio Militar No. 5917 Int. 8 Plaza Quintas del Rio Chihuahua, Chihuahua México and the Mexico offices as Channel Inteligence Evolution, S.A. de C.V. 153-1 Col. Hipodromo Condesa 06170. Neither of these appear to have any connection to MAGALLON.

16. A search of the Texas Secretary of State website shows that Magallon Enterprises LLC filed an expedited Certificate of Filing for the Assumed Name of "Magallon Automotive Industries" on March 28, 2016.

17. Based on the foregoing, declarant further believes that the subject-matter $39,100.00 in United States Currency is property which constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. § 801 *et seq.*

Executed on this 7th day of June, 2016.

_TFO Kevin Thebeau_ (signature)

KEVIN THEBEAU
Task Force Officer
Drug Enforcement Administration